IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL LEE DAVIS | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-07-CV-0167-B |
| RICK THALER, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Michael Lee Davis, a Texas prisoner, has filed an application for writ of habeas

corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be

dismissed in part on limitations grounds and denied in part.

I.

In 1999, a Dallas County grand jury indicted petitioner on one count of securing execution

of documents by deception ("SEDD") and five counts of money laundering in connection with a

sophisticated scheme to defraud insurance companies that was carried out through viatical

settlements.[1] After a trial before the court, petitioner was convicted on all counts and sentenced to

60 years confinement. The trial court also fined petitioner $10,000 and ordered him to pay more than

$3.6 million in restitution. On direct review, the state appeals court affirmed petitioner's convictions

---

[1] A viatical settlement is a transaction in which a terminally ill person insured by a life insurance policy sells the policy at a discounted value based on the life expectancy of the insured. The purchaser becomes the beneficiary, receiving the policy proceeds upon the insured's death. Although there is nothing unlawful about viatical settlements in general, the scheme giving rise to the charges against petitioner involved life insurance policies purchased by HIV positive or AIDS patients, who concealed their illnesses by falsely answering medical questions on the insurance applications. The fraudulently obtained policies were then sold to unsuspecting purchasers through a viatical settlement company owned by petitioner. *See Davis v. State*, 68 S.W.3d 273, 276-77 (Tex. App.--Dallas 2002, pet. ref'd).

and sentences, but reversed the restitution order and remanded the cases for a hearing on restitution only. *Davis v. State*, 68 S.W.3d 273 (Tex. App.--Dallas 2002, pet. ref'd). Dissatisfied with the limited scope of the remand, petitioner asked for a new punishment hearing. The trial court denied his request, and the court of appeals affirmed. *Davis v. State*, Nos. 05-03-00066-CR, 05-03-00067-CR, 05-03-00068-CR, 05-03-00069-CR, 05-03-00070-CR & 05-03-00071-CR, 2004 WL 784552 (Tex. App.--Dallas, Mar. 29, 2004, pet. ref'd). Petitioner then challenged each of his convictions in separate applications for state post-conviction relief. The Texas Court of Criminal Appeals denied the applications without written orders on the findings of the trial court. *Ex parte Davis*, WR-65,167-01, WR-65,167-02, WR-65,167-03, WR-65,167-04, WR-65,167-05 & WR-65,167-06 (Tex. Crim. App. Nov. 22, 2006). Having exhausted his state remedies, petitioner now seeks federal habeas relief.

## II.

Petitioner raises multiple grounds for relief in a 220-page writ. As best the court can decipher this prolix pleading, petitioner appears to contend that: (1) the SEDD indictment was defective; (2) the trial court lacked subject matter jurisdiction; (3) the SEDD and money laundering statutes are unconstitutional; (4) a prior murder conviction was improperly used for impeachment and to enhance his sentence; (5) he was punished more severely for rejecting a plea bargain and exercising his right to a trial; (6) he received ineffective assistance of counsel at trial and on appeal; (7) his conviction was the result of prosecutorial misconduct; (8) the cumulative effect of numerous constitutional errors deprived him of a fair trial; and (9) he was denied due process by the state habeas court.[2]

---

[2] In a motion to dismiss filed on June 11, 2007, respondent argued that all these claims were barred by the AEDPA statute of limitations. The court denied the motion and ordered respondent to file an answer on the merits. *See Davis v. Quarterman*, No. 3-07-CV-0167-B, rec. at 7 (N.D. Tex. Aug. 21, 2007), *rec. adopted*, (N.D. Tex. Nov. 27, 2007).

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here,

a state court has already rejected the claims raised by petitioner, a federal court may grant habeas

relief only if the state court adjudication:

> (1)    resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 411-13, 120 S.Ct. 1495, 1522-24,

146 L.Ed.2d 389 (2000). A state court decision is contrary to clearly established federal law if "it

relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches

a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v.*

*Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams*, 120 S.Ct.

at 1519-20. A decision constitutes an "unreasonable application" of clearly established federal law

if "the state court identifies the correct governing legal principle from [the] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523.

To be unreasonable, the application of clearly established federal law must be more than merely

incorrect. *Gardner v. Johnson*, 247 F.3d 551, 559 (5th Cir. 2001). The standard is one of "objective

reasonableness." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 121 S.Ct.

2220 (2001), *citing Williams*, 120 S.Ct. at 1521-22. Factual determinations made by state courts are

presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of

correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

B.

In several related grounds, petitioner contends that the SEDD indictment was defective for a variety of reasons, thereby depriving the trial court of subject matter jurisdiction.

1.

The sufficiency of an indictment is a matter of state law. *See Johnson v. Puckett*, 930 F.2d 445, 447 (5th Cir.), *cert. denied*, 112 S.Ct. 252 (1991). A petitioner is not entitled to federal habeas relief unless the indictment is so defective that the state court lacks jurisdiction. *See McKay v. Collins*, 12 F.3d 66, 68 (5th Cir.), *cert. denied*, 115 S.Ct. 157 (1994); *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980). An indictment that sets forth the elements of the offense in language clear enough to enable the defendant to plead a bar in jeopardy does not raise a jurisdictional defect. *See Alexander v. McCotter*, 775 F.2d 595, 599 (5th Cir. 1985). Furthermore, federal courts may not consider the issue if the highest state appellate court has reviewed the indictment and concluded that jurisdiction is proper. *See McKay*, 12 F.3d at 68; *Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988), *cert. denied*, 109 S.Ct. 1546 (1989).

Petitioner argues that the SEDD indictment was defective because it listed defrauded insurance companies, rather than investors who purchased the policies, as victims of the offense. Under Texas law, a person commits the offense of SEDD "if, with intent to defraud or harm any person, he, by deception [ ] causes another to sign or execute any document affecting property or service or the pecuniary interest of any person." TEX. PENAL CODE ANN. § 32.46(a)(1) (Vernon Supp. 2007). An offense under this statute is a first degree felony "if the value of the property, service, or pecuniary interest is $200,000 or more." *Id.* § 32.46(b)(7). The SEDD indictment returned by the grand jury alleges, in pertinent part, that petitioner:

> on or about the dates listed below, in Dallas County, Texas, did then and there, with the intent to defraud and harm the insurance companies listed below, by deception, to wit: said Defendant created and confirmed by words and conduct a false impression of fact that said Defendant did not believe to be true that was likely to affect the judgment of the said insurance companies in the transactions, and caused the said insurance companies to sign and execute documents, to wit: life insurance policies in the amounts listed below, which affected the property, service and pecuniary interest of the said insurance companies[.]

*Ex parte Davis*, WR-65,167-02, Tr. at 113. Included in the indictment are the execution dates, the names of insureds, the policy amounts, and the companies that issued 31 life insurance policies marketed and sold by petitioner. *Id.*, Tr. at 113-14. The indictment goes on to allege that "all of said amounts were obtained pursuant to one scheme and continuing course of conduct and the aggregate value of the property, service and pecuniary interest so affected was $200,000.00 or more[.]" *Id.*, Tr. at 114.

Clearly, the indictment contains all the essential elements of SEDD. Contrary to petitioner's argument, there is no requirement to list investors as victims of the offense. *See Woodley v. State*, No. 08-00-00470-CR, 2003 WL 550298 at *5 (Tex. App.--El Paso 2003, pet. ref'd), *citing Smith v. State*, 681 S.W.2d 71, 75-76 (Tex. App.--Houston [14th Dist.] 1983), *aff'd*, 722 S.W.2d 408 (Tex. Crim. App. 1986), *cert. denied*, 107 S.Ct. 1573 (1987) ("By the terms of the [SEDD] statute, the offense is completed when a person causes another to execute a document 'with the intent to defraud or harm . . .' There is no requirement that the state prove the resulting harm."). Moreover, the Texas Court of Criminal Appeals rejected petitioner's claim on state collateral review. *See Ex parte Davis*, WR-65,167-02, Tr. at cover. Because the issue was presented to the highest state appellate court for review, federal habeas relief is not proper. *See Alexander*, 775 F.2d at 599 (state court's refusal to grant habeas relief is tantamount to finding that indictment does not contain a jurisdictional defect);

*Andrews v. Dretke*, No. 3-04-CV-1699-L, 2004 WL 3048616 at *2 (N.D. Tex. Nov. 23, 2004), *rec. adopted*, 2004 WL 3048638 (N.D. Tex. Dec. 30, 2004) (same).

2.

Petitioner's other jurisdictional arguments also lack merit.  According to petitioner, the trial court lacked jurisdiction because there was no evidence that the life insurance policies were ever issued, were ever sold to investors, or had any value.  Without such evidence, petitioner maintains that there is no factual support for a felony indictment or the court's restitution order.  However, these defects--even if proved--would not divest the trial court of subject matter jurisdiction.  In Texas, jurisdiction is conferred on a felony court by the filing of a valid indictment charging the defendant with a felony offense.  *See, e.g. Trejo v. State*, 280 S.W.3d 258, 261 (Tex. Crim. App. 2009), *citing Bruce v. State*, 419 S.W.2d 646, 647 (Tex. Crim. App. 1967).  An indictment is valid if it sets forth the essential elements of the offense and provides the defendant with sufficient notice to allow him to prepare a defense.  *See Cook v. State*, 902 S.W.2d 471, 475-76 (Tex. Crim. App. 1995) (citing cases).  As previously stated, the SEDD indictment alleges a fraudulent insurance scheme affecting property, service, or the pecuniary interest of a person valued at $200,000 or more.  *Ex parte Davis*, WR-65,167-02 Tr. at 113-14.  Each of the money laundering indictments allege the acquisition, receipt, possession, or transfer of proceeds of criminal activity valued at $100,000 or more.  *See, e.g. Ex parte Davis*, WR-65,167-01, Tr. at 113.  These allegations are sufficient to establish felony jurisdiction.

C.

Petitioner further contends that the SEDD statute is unconstitutional on its face, and that both the SEDD and money laundering statutes are unconstitutional as applied to him.

1.

Petitioner alleges that the SEDD statute is vague, over broad, and inhibits the right to free speech. A statute is facially unconstitutional if "no standard of conduct is specified at all." *Ferguson v. Estelle*, 718 F.2d 730, 735 (5th Cir. 1983), *quoting Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). The court must presume that the statute is constitutional. *See Screws v. United States*, 325 U.S. 91, 98, 65 S.Ct. 1031, 1033-34, 89 L.Ed. 1495 (1945). To prevail on his vagueness challenge, petitioner must prove, *inter alia*, that the SEDD statute is impermissibly vague in all of its applications. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). "A [petitioner] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Id.*, 102 S.Ct. at 1191.

On direct appeal, the state court rejected petitioner's claim that the SEDD statute was void for vagueness because it did not define the term "affecting." According to state court:

> The mere failure to define "affecting" does not make a statute unconstitutionally vague. Instead, when words are not statutorily defined, we construe them in the context in which they are used and in accordance with the rules of grammar and common usage. The term "affect" is defined as "to produce an effect upon" or "to produce a material influence upon or alteration in." Here, the life insurance policies written in response to the false applications clearly had a material influence on the property or pecuniary interest of the companies that issued them.

*Davis*, 68 S.W.3d at 284 (internal citations omitted). Petitioner has failed to show that this decision is contrary to, or involved an unreasonable application of, clearly established federal law.

Nor has petitioner demonstrated that the SEDD statute is overly broad or inhibits the right to free speech. To prevail on his overbreadth claim, petitioner must show that the statute reaches a substantial amount of constitutionally protected conduct. *See Village of Hoffman Estates*, 102

S.Ct. at 1191. The plain language of the SEDD statute does not raise such a concern, because fraud is not entitled to any constitutional protections. Similarly, fraudulent activity is not protected by the First Amendment. These grounds for relief should be overruled.

2.

Petitioner also challenges the constitutionality of the SEDD and money laundering statutes as applied to him. To the extent petitioner argues that these statutes are unconstitutional as applied because they are vague, over broad, and inhibit the right to free speech, his claim fails for the same reasons previously explained by the court. Simply stated, neither the SEDD statute nor the money laundering statute reach constitutionally protected conduct. Instead, these statutes prohibit fraud in connection with the execution of documents affecting property or service or the pecuniary interest of another, *see* TEX. PENAL CODE ANN. § 32.46(a)(1), and the knowing acquisition, possession, or transfer of proceeds of criminal activity, *see id.* § 34.02(a)(1). It is ludicrous to suggest that petitioner did not have notice that the conduct giving rise to the SEDD and money laundering charges--soliciting people to lie about their health status in order to secure life insurance policies-- exposed him to criminal liability.

One aspect of petitioner's vagueness argument merits further discussion. Petitioner maintains that the money laundering statute in effect at the time of the charged offense did not provide adequate notice that "proceeds of criminal activity" included personal checks. Indeed, one Texas intermediate court of appeals has held that the term "funds," as defined in the pre-2005 version of the statute, did not include checks or other negotiable instruments that are not the functional equivalent of cash. *See Ex parte Ellis*, 279 S.W.3d 1, 29 & n.24 (Tex. App.--Austin 2008, pet.

granted).[3]  However, other Texas courts have upheld money laundering convictions where the sole

"proceeds of criminal activity" were personal checks.  *See, e.g. Lee v. State*, 29 S.W.3d 570, 576

(Tex. App.--Dallas 2000, no pet.); *Igbinoba v. State*, No. 05-00-01566-CR, 2001 WL 1071265 at

*4 (Tex. App.--Dallas Sept. 14, 2001, no pet.).  Under the AEDPA, a federal court may grant habeas

relief only if the state court decision is contrary to clearly established federal law or was based on

an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding.  *See* 28 U.S.C. § 2254(d).  Notwithstanding this split of authority among Texas courts,

there is no controlling Supreme Court or Fifth Circuit precedent to support petitioner's claim that the

Texas money laundering statute is unconstitutionally vague as applied to him.  This ground for relief

should be overruled.

### D.

Next, petitioner challenges the validity of a 1981 murder conviction used for impeachment

and to enhance his sentence.  Respondent counters that this claim is barred by limitations.  The

AEDPA establishes a one-year statute of limitations for federal habeas proceedings brought under

28 U.S.C. § 2254.  In general, the limitations period runs from "the date on which the judgment

became final by the conclusion of direct review or the expiration of the time for seeking such

review[.]"  *Id.* § 2244(d)(1)(A).  Because petitioner's murder conviction became final before the

AEDPA was signed into law on April 24, 1996, he had a one-year grace period in which to seek

federal habeas relief.  *See United States v. Flores*, 135 F.3d 1000, 1004 (5th Cir. 1998), *cert. denied*,

119 S.Ct. 846 (1999).  Thus, petitioner was required to challenge his 1981 murder conviction in a

---

[3] In its petition for discretionary review, the State of Texas argues that "[a] person of ordinary intelligence reading
the money laundering statute in 2002 would have had fair warning that he might face prosecution if he money-laundered
criminal proceeds conveyed by check."  *Ex Parte Ellis*, Nos. PD-0529-09 & PD-0545-09, 2009 WL 4074218 at *8 (St.
PDR Br. Oct. 5, 2009).  That issue is currently pending before the Texas Court of Criminal Appeals.

federal writ of habeas corpus by April 24, 1997. Having failed to do so, petitioner's belated attempt to collaterally attack that conviction is time-barred. *See Applin v. Dretke*, No. 4-03-CV-0805-Y, 2003 WL 22383572 at *9 (N.D. Tex. Oct. 8, 2003), *rec. adopted*, 2003 WL 22862692 (N.D. Tex. Nov. 4, 2003) (prior conviction used for enhancement purposes may not be challenged on federal habeas review if the conviction is no longer open to direct or collateral attack in its own right).

## E.

Petitioner further argues that he was punished more severely for rejecting a plea bargain and exercising his right to a trial. It is well-settled that there is no constitutional right to a plea agreement. *See Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977); *United States v. Crain*, 33 F.3d 480, 487-88 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 1142 (1995). Within the context of plea negotiations, a prosecutor may threaten, and eventually carry out, harsher treatment if a defendant chooses to go to trial rather than plead guilty. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). That petitioner received a longer prison sentence and was required to pay more in restitution than offered by the prosecutor during plea negotiations does not rise to the level of a constitutional error.

## F.

The vast majority of petitioner's claims involve his representation at trial and on appeal. Succinctly stated, petitioner criticizes trial counsel for: (1) not challenging the defective indictments, the lack of subject matter jurisdiction, the unconstitutional SEDD and money laundering statutes, and the improper use of his 1981 murder conviction for impeachment and enhancement purposes; (2) failing to investigate the case, to review the evidence, and to consult with petitioner prior to and during trial; (3) tactical decisions involving the introduction of evidence and arguments presented to the trial court; and (4) mouthing an obscenity to a witness. Petitioner further argues that he

received ineffective assistance of counsel on appeal because his lawyer failed to raise some 30 additional issues and did not let petitioner supplement his appellate brief.

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067. Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068; *see also Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (habeas petitioner must show that trial result was unreliable or proceeding fundamentally unfair due to deficient performance of counsel). There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Romero v. Lynaugh*, 884 F.2d 871, 876 (5th Cir. 1989), *cert. denied*, 110 S.Ct. 1311 (1990). In order to obtain federal habeas relief, a petitioner must affirmatively show how the actions of his attorney deprived him of a fair trial. *Czere v. Butler*, 833 F.2d 59, 63-64 (5th Cir. 1987).

2.

Most of petitioner's ineffective assistance of counsel claims are either patently frivolous, negated by the record, or conclusory in nature. As previously discussed, the indictments were not defective and the trial court had subject matter jurisdiction. There was nothing improper about using

petitioner's prior murder conviction for impeachment and enhancement purposes. Other complaints made by petitioner about his legal representation, such as counsel's failure to introduce evidence that petitioner offered to take a polygraph test and that some investors had also purchased legitimate policies, had no effect on the outcome of the trial. The court is neither required nor inclined to comb through more than 200 pages of argument and random citations to legal authority in an attempt to ferret out a possible meritorious claim. *See Jones v. Barnes*, 463 U.S. 745, 753, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983) ("A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions.").

3.

Only a handful of petitioner's ineffective assistance of counsel claims require more than a cursory analysis. In seven different grounds, petitioner contends that this attorney failed to investigate the case, to review evidence, and to consult with him prior to and during trial. These complaints can be grouped into five broad categories: (1) counsel did not listen to tape-recorded witness statements; (2) counsel failed to obtain and review exculpatory evidence; (3) counsel did not discuss the case with petitioner or permit him to testify at trial; (4) counsel forced petitioner to waive his right to a jury; and (5) counsel prevented petitioner from personally reviewing the evidence against him.

"An attorney has a duty to independently investigate the charges against his client." *Bower v. Quarterman*, 497 F.3d 459, 467 (5th Cir. 2007), *cert. denied*, 128 S.Ct. 2051 (2008), *citing Wiggins v. Smith*, 539 U.S. 510, 524, 123 S.Ct. 2527, 2536-37, 156 L.Ed.2d 471 (2003). While the precise contours of a reasonable investigation are fact-specific and not clearly defined, the Fifth Circuit has held that "[i]nformed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of his case are cornerstones of effective assistance of

counsel." *Id.*, quoting *Washington v. Watkins*, 655 F.2d 1346, 1355 (5th Cir. 1981), *cert. denied*, 102 S.Ct. 2021 (1982). The reasonableness of an attorney's investigation depends, in part, on information supplied by the defendant. *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir.), *cert. denied*, 118 S.Ct. 361 (1997); *see also Strickland*, 104 S.Ct. at 2066 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions . . . In particular, what investigation decisions are reasonable depends critically on such information."). In order to establish that counsel was ineffective for failing to investigate, "a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).

In a detailed affidavit filed with the state habeas court, petitioner's attorney, Mark Watson, explained that he thoroughly investigated the case, reviewed all the evidence, and consulted extensively with petitioner. According to Watson:

- there was no tape recording exonerating petitioner;

- Watson, another attorney, and a legal assistant spent several months reviewing the evidence prior to trial;

- petitioner reviewed documents with his attorneys in a room at the Dallas County Sheriff's Office in the Frank Crowley Criminal Courts Building, and was present the majority of the time when counsel reviewed evidence;

- Watson, along with his legal assistant and another attorney, met with petitioner "repeatedly" during the case;

- there was no exculpatory evidence; and

- a review of documents kept at a storage facility rented by petitioner revealed evidence of other "illegal or questionable schemes[.]"

*Ex parte Davis*, WR-65,167-01, Tr. at 94-95, ¶¶ 1, 2, 5, 7.  With respect to petitioner's claim that he

was forced to waive a jury and denied the right to testify at trial, Watson explained:

> Mr. Davis was very prepared to testify.  In the beginning we planned
> to have a jury trial and he was to testify.  The Court ruled (before the
> trial) that his prior convictions [sic] for murder could be used during
> cross-examination even though they were remote.  We then switched
> to a trial before the court with his consent.  I believe this was covered
> on the record.  We planned on his testifying in his trial before the
> court.  At the end of the state's case we thought Mr. Davis would be
> convicted by the court.  We also believed he would be convicted
> whether or not he testified.  We believed that if Mr. Davis testified it
> would hurt his chances of winning the case on appeal.  We believed
> there was a possibility that on appeal we could win because there
> were issues as to the amount of evidence linking him to the offense
> as well as other issues.  It was a tactical decision and one that Mr.
> Davis agreed to.

*Id.*, Tr. at 95, ¶ 9.[4]  The state habeas court rejected petitioner's ineffective assistance of counsel claim,

finding that Watson is a "trustworthy individual[ ] and that the statements made by [him] in [his]

affidavit[ ] are worthy of belief."  *Id.*, Tr. at 91, ¶ 2.  That finding is conclusive in a subsequent

federal habeas proceeding unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1);

*see also Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001), *cert. denied*, 123 S.Ct. 106

(2002) (presumption of correctness applies to both explicit and implicit findings necessary to state

court's conclusions of mixed law and fact).  Petitioner has failed to offer any evidence, much less

clear and convincing evidence, to rebut the state court findings.

4.

Petitioner also faults his attorney for certain tactical decisions made during trial.  The

*Strickland* standard is highly deferential to strategic choices made by trial counsel.  "So long as

---

[4] An independent review of the state court record confirms that petitioner knowingly waived his right to a jury trial, (*see* SF-II at 45-47), and informed his attorney "after long and thoughtful consideration" that he did not wish to testify, (*see* SF-XI at 5).

counsel made an adequate investigation, any strategic decisions made as a result of that investigation fall within the wide range of objectively reasonable professional assistance." *Cotton v. Cockrell*, 343 F.3d 746, 752 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1417 (2004), *quoting Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004). A conscious and informed decision on trial tactics cannot form the basis of an ineffective assistance of counsel claim "unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* at 753, *quoting United States v. Jones*, 287 F.3d 325, 331 (5th Cir.), *cert. denied*, 123 S.Ct. 549 (2002).

Among the complaints made by petitioner are that his attorney: (1) failed to call certain witnesses to testify on his behalf; (2) did not introduce an exculpatory tape recording; (3) failed to elicit evidence that the policies were worthless and not issued or sold to investors; and (4) did not advise the court that petitioner had assisted the state in other criminal prosecutions and paid money for restitution and charity. Petitioner further contends that his attorney should have raised certain defenses, such as selective prosecution, reliance on the advise of counsel, mistake of law or fact, and a disparity in sentencing. All these claims lack merit. With respect to the witnesses who might have testified on behalf of petitioner, Watson stated:

> One of the witnesses Mr. Davis assured us would save the day, told us that he could not help Mr. Davis and that it would not be in Mr. Davis' best interest for us to call him as a witness. I believe his name was John Francone, but I am not positive. As I recall, one witness Mr. Davis wanted us to call had helped him hide or launder large amounts of money.

> \* \* \* \*

> We discussed at length possible witnesses on his behalf and could find no one helpful to him. He was extremely guilty and any parties we could think of pointed more towards guilt or sophisticated planning than innocence.

*Ex parte Davis*, WR-65,167-01, Tr. at 95, ¶ 8 & 98, ¶ 29. Watson went on to explain his defense

strategy in view of the overwhelming evidence of guilt:

> All our investigations revealed that Mr. Davis had concocted a
> scheme to defraud insurance companies. The best defense seemed to
> be to make the state prove its case beyond a reasonable doubt. We
> felt that it may be difficult for the state to put on enough **admissible**
> evidence to close the loop as to Mr. Davis's knowledge that the
> policies were obtained by fraud. When the state rested its case, we
> felt that Mr. Davis would probably be convicted regardless of what
> evidence we put on.

*Id.*, Tr. at 99, ¶ 32 (emphasis in original). As previously discussed, there was no tape recording

exonerating petitioner or any other exculpatory evidence. *See id.*, Tr. at 94-95, ¶¶ 1 & 7. Evidence

that petitioner sold worthless policies that were never issued actually pointed to guilt and was

harmful to the defense. *See id.*, Tr. at 96, ¶ 14. Although Watson did not recall if petitioner helped

the state with other criminal prosecutions, including a capital murder case where his co-defendants

received the death penalty,[5] a prosecutor in one of those cases testified that petitioner "couldn't be

trusted. He still can't be trusted because like I said earlier, the individual has no soul. He preys on

the elderly. He preys on children." (SF-XII at 62). Nor did Watson recall whether petitioner had

given $50,000 to any charitable organization. *Ex parte Davis*, WR-65,167-01, Tr. at 101, ¶ 47.

Watson explained his trial strategy in detail, concluding there was no legitimate basis for any of the

defenses suggested by petitioner. *Id.*, Tr. at 99-101, ¶¶ 33-45. As with the other ineffective

assistance of counsel claims, the state habeas court accepted Watson's testimony as "true, correct and

dispositive of the allegation presented by Applicant relative to said counsel." *Id.*, Tr. at 91, ¶ 2.

Petitioner offers nothing, other than his conclusory and self-serving assertions, to rebut the state

court findings.

---

[5] In 1981, petitioner, under his birth name of Walter Waldhauser, pled guilty to soliciting the murders of a Houston
family, including a 14 month-old baby, to collect life insurance benefits and estate proceeds.

5.

In another ground for relief, petitioner contends that he received ineffective assistance of counsel because his attorney mouthed an obscenity to a witness, causing the trial court to stop the proceedings and issue a rebuke. The record shows that Watson mouthed obscenities at Ron Heatherly, the owner of a viatical settlement company who testified for the state. (*See* SF-VIII at 179-80). When the prosecutor objected, the trial judge immediately remarked, "I read Mr. Watson's lips and maybe we'll have [a] discussion after this trial is completed about what was said." (*Id.* at 180). Initially, the judge threatened to hold Watson in contempt of court unless he apologized to the witness in writing. (*See* SF-X at 53). However, the judge later withdrew that sanction and stated on the record:

> Before we proceed with matters dealing with the issue of punishment, on the record the Court wishes to take this opportunity to withdraw the sanctions that the Court was considering imposing against Mr. Mark Watson for unverbalized communication to witness Ron Heatherly on April 19th, 2000. In lieu of his being sanctioned for conduct the Court deemed to be inappropriate, Mr. Watson has assured the Court that he is--regrets the conduct that he engaged in in court, has assured me that it was out of character for him to do so, and as recompense for his conduct has assured the Court that he will be tendering to the Society for the Prevention of Cruelty to Animals, a charity of his choice, a check in the sum of $250. I consider this matter closed, and I don't want my conduct or my comments to be construed as any type of--lingering type of reflection that I will have on Mr. Watson either personally or professionally. The record [will] further reflect that I have great respect for Mr. Watson as a person and an attorney.

(SF-XII at 2). There is absolutely no evidence that this isolated instance of unprofessional conduct was so prejudicial that it affected the outcome of petitioner's trial.

6.

Petitioner alleges that he received ineffective assistance of counsel on appeal because his lawyer failed to raise some 30 additional issues and would not let petitioner supplement his appellate brief. "The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.), *cert. denied*, 110 S.Ct. 419 (1989); *see also Jones*, 103 S.Ct. at 3313. Instead, counsel is obligated only to raise and brief those issues that are believed to have the best chance of success. *See Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1156 (2004); *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999). In order to prove ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal fell below an objective standard of reasonableness. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000), *citing Strickland*, 104 S.Ct. at 2064. This reasonableness standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id., quoting Williamson*, 183 F.3d at 462.

Here, appellate counsel raised eight nonfrivolous issues in a well-researched brief.[6] Although counsel did not raise the additional claims suggested by petitioner or allow him to file a supplemental brief, petitioner has not shown that his convictions would have been reversed had those claims been raised on direct appeal. *See Maki v. Dretke*, No. 3-03-CV-0011-D, 2004 WL 719146 at *8 (N.D. Tex. Apr. 1, 2004), *rec. adopted*, 2004 WL 1170476 (N.D. Tex. May 25, 2004). Moreover, most of those claims have been rejected on federal habeas review. *See Jackson v. Quarterman*, No. 3-06-CV-0494-G, 2008 WL 58879 at *10 (N.D. Tex. Jan. 3, 2008), *aff'd*, No. 08-

---

[6] Counsel focused his appeal on the sufficiency of the evidence, certain evidentiary rulings made by the trial court, the constitutionality of the SEDD statute, and the restitution order. *See Davis*, 68 S.W.3d at 276.

10051, 2009 WL 5102867 (5th Cir. Dec. 23, 2009) (appellate counsel was not ineffective for failing to appeal conviction on grounds that were considered and rejected by federal habeas court). Petitioner's unsupported and conclusory assertions do not merit habeas relief.

G.

In multiple grounds for relief, petitioner contends that his convictions were the result of prosecutorial misconduct. These claims fall into two broad categories: (1) the failure to disclose exculpatory evidence; and (2) falsely representing to the court that petitioner's home was owned by a foreign trust.

The prosecution has a duty to disclose all evidence favorable to the defendant in a criminal case. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). To establish a *Brady* violation, a habeas petitioner must prove that the evidence suppressed by the prosecutor was favorable to him and material to either guilt or punishment. *See Edmond v. Collins*, 8 F.3d 290, 293 (5th Cir. 1993); *United States v. Jackson*, 978 F.2d 903, 912 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 2429 (1993). Here, petitioner alleges that the prosecutor buried exculpatory evidence consisting of life insurance policies and checks among 12,000 pages of exhibits, constructively denied him access to witness interviews by providing incomplete tape recordings, and withheld a letter written by his civil attorney to the prosecutor claiming that petitioner's confession to the 1981 murder was false and could not be used as evidence. All three claims are without merit. The prosecutor was not required to segregate the life insurance policies and checks from the other exhibits produced to defense counsel. *See United States v. Mmahat*, 106 F.3d 89, 94 (5th Cir.), *cert. denied,* 118 S.Ct. 136 (1997), *overruled on other grounds by United States v. Estate of Parsons*, 367 F.3d 409 (5th Cir. 2004) ("[T]here is no authority for the proposition that the government's *Brady* obligations require it to point the defense to specific documents within a larger mass of material that

it has already turned over."). Nor is there any evidence that omissions from the tape-recorded witness interviews or the letter written by petitioner's civil attorney contained exculpatory evidence. Moreover, *Brady* does not apply to the letter because it was known or reasonably available both to the prosecution and the defense. *See Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir.), *cert. denied*, 123 S.Ct. 14 (2002) (citing cases).

With respect to the representation that petitioner's home was owned by a foreign trust, such a statement does not appear in the record. Even petitioner concedes that the prosecutor "made this materially false statement in such a low voice that Davis is uncertain if the court reporter or his attorney heard it." (*See* Sec. Am. Hab. Pet. at 8(3) & 8(100-01)). Petitioner has failed to establish that any prosecutorial misconduct occurred, much less deprived him of due process and a fair trial. *See Darden v. Wainwright*, 477 U.S. 168, 180-81, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986); *Dowthitt v. Johnson*, 230 F.3d 733, 755 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 1250 (2001).

### H.

Petitioner submits a number of other claims under the guise of "cumulative error." These claims include: (1) the unconstitutionality of the SEDD statute; (2) the improper admission of his 1981 murder conviction; (3) factual insufficiency of the evidence; (4) the failure to corroborate accomplice witness testimony; (5) errors in computing the amount of restitution; and (6) the failure to grant a new punishment hearing on remand.

Under the cumulative error doctrine, "an aggregation of non-reversible errors . . . can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998), *cert. denied*, 119 S.Ct. 887 (1999). However, federal habeas relief may be granted for cumulative errors in the conduct of a state trial only where "(1) the individual errors involved matters of constitutional dimension rather than mere violations of state

law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected

the entire trial that the resulting conviction violates due process.'" *Derden v. McNeel*, 978 F.2d 1453,

1454 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 2928 (1993), *quoting Cupp v. Naughten*, 414 U.S. 141,

147, 94 S.Ct. 396, 400-01, 38 L.Ed.2d 368 (1973). The court has already determined that the SEDD

statute is not unconstitutional. None of the other errors allegedly committed by the state court

involve matters of constitutional dimension. Therefore, relief is not available under the cumulative

error doctrine.

I.

To the extent that petitioner challenges the procedures afforded him on state habeas review,

his claim is not cognizable under 28 U.S.C. § 2254. "That is because an attack on the state habeas

proceeding is an attack on a proceeding collateral to the detention and not the detention itself." *Rudd*

*v. Johnson*, 256 F.3d 317, 320 (5th Cir.), *cert. denied*, 122 S.Ct. 477 (2001), *citing Nichols v. Scott*,

69 F.3d 1255, 1275 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 2559 (1996). This ground for relief

should be overruled.

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be dismissed in part and denied in

part. The claim challenging petitioner's 1981 murder conviction should be dismissed with prejudice

on limitations grounds. His other claims should be denied on the merits. Petitioner's motion for an

evidentiary hearing should be denied.

A copy of this report and recommendation shall be served on all parties in the manner

provided by law. Any party who objects to any part of this report and recommendation must file

specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1);

FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:   March 26, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE